TRI COUNTY DISTRIBUTING, INC., APPELLEE, *v.* CANANDAIGUA WINE COMPANY, INC. ET AL., APPELLANTS.

[Cite as *Tri County Distrib., Inc. v. Canandaigua Wine Co.* (1993), 68 Ohio St.3d 123.]

(No. 92–1479—Submitted September 14, 1993—Decided December 29, 1993.)

[black redaction blocks]

*Comstock, Springer & Wilson* and *Marshall D. Buck,* for appellee.

*Jones, Day, Reavis & Pogue, John W. Edwards II, Kathleen B. Burke* and *John M. Majoras,* for appellants Canandaigua Wine Company, Inc. and Gene Minardi.

*DiBlasio, Flask & Associates* and *H.A. DiBlasio,* for appellant Ohio Wine Imports Co., Inc.

*Buckingham, Doolittle & Burroughs* and *Orville L. Reed III; J. Richard Lumpe* and *Timothy J. Bechtold,* urging affirmance for *amicus curiae,* Wholesale Beer and Wine Association of Ohio.

*Per Curiam.* The threshold question presented by the instant action concerns whether a franchise relationship exists between the appellee and Canandaigua. Resolution of this issue requires consideration of R.C. 1333.83. At the relevant time, it provided:

"Every manufacturer of alcoholic beverages shall contract with or offer in good faith to its distributors a written franchise providing for, and specifying the rights and duties of both parties in effecting the sale of the specified brands or products of the manufacturer. Any notice or acceptance required to be given or made by either party to the franchise shall be in writing and signed by the authorized representative of the parties. Any breach, actual or claimed, of a franchise made pursuant to this section shall not be grounds for suspension or revocation of any permit or consent to import issued by the department of liquor control. *When a distributor of beer or wine for a manufacturer, or the successors or assigns of the manufacturer, distributes the beer or wine for six months or more without a written contract, a franchise relationship is established between the parties, and sections 1333.82 to 1333.87 of the Revised Code apply to the manufacturer, its successor or assigns, and the distributor.*" (Emphasis added.) 140 Ohio Laws, Part II, 3970–3971.

The parties differ as to the meaning of this provision. Appellee (Tri County) contends that the six-month "course of dealing" franchise arising by operation of law under R.C. 1333.83 occurs only in the absence of a written agreement. Stated differently, without a written agreement, a manufacturer and distributor must engage in a course of dealing for six months in order for a franchise to be created. However, where there is a written agreement, its mere existence and not its terms creates a franchise. Appellee seeks support for this view in R.C. 1333.82(D), which states:

" 'Franchise' means a contract or any other legal device used to establish a contractual relationship between a manufacturer and a distributor."

Appellant Canandaigua responds that appellee's interpretation results in an absurdity by creating a franchise relationship from the mere existence of a written agreement which clearly disclaims any such relationship. Appellant instead interprets R.C. 1333.83 to mean that a franchise relationship is created either through a six-month course of dealing or through a written agreement *which expressly establishes a franchise relationship* (or, at least, does not expressly disclaim the existence of such a relationship).

Appellee suggests, however, that the purpose of R.C. 1333.83 is to preclude manufacturers from abusing their superior bargaining power by triggering a franchise relationship whenever an agreement is executed between the parties. Appellee contends that the law protects distributors from unfair tactics by providing that *any* agreement assures an ongoing relationship between the parties and by precluding the manufacturer from terminating the relationship except for reasonable cause. See R.C. 1333.84(D).

While this latter interpretation of the motivation behind R.C. 1333.83 has some appeal, given the plain language of the statute it would be nonsensical to suggest

that the very agreement which disclaims any franchise relationship is the vehicle by which such a relationship is established. Second, it would be extremely ironic if a short-term course of dealing (*i.e.*, less than six months) without a contract will not establish a franchise relationship but a written understanding of similar duration which disclaims any such intent produces the opposite effect.

We therefore conclude that an alcoholic beverages franchise is not created by operation of law pursuant to R.C. 1333.83 through the mere existence of a written contract between a manufacturer and distributor of such products where the contract disclaims any intention to create such a relationship and the contract term is for less than six months.[1]

Inasmuch as the contract at issue does not create a franchise relationship governed by R.C. 1333.82 *et seq.*, it is unnecessary to consider whether the forum-selection provision contained in the contract would conflict with R.C. 1333.87 or whether the 1990 amendment to R.C. 1333.87 vesting exclusive jurisdiction in Ohio courts of common pleas (143 Ohio Laws, Part I, 1278–1279) violated the single-subject requirement of Section 15(D), Article II of the Ohio Constitution.

The forum selection provision is therefore valid and jurisdiction over the present action is properly vested thereby in the courts of New York. See

---

1. While inapplicable to the instant controversy, subsequent amendments to R.C. 1333.85 appear to address the situation presented herein. R.C. 1333.85, as amended by Am.Sub.H.B. No. 725, effective April 16, 1993, provides in relevant part:

"*Except as provided in divisions (A) to (D) of this section, no manufacturer or distributor shall cancel or fail to renew a franchise or substantially change a sales area or territory without the prior consent of the other party for other than just cause and without at least sixty days' written notice to the other party setting forth the reasons for such cancellation, failure to renew, or substantial change.*

"* * *

"(D) *If a successor manufacturer acquires all or substantially all of the stock or assets of another manufacturer through merger or acquisition or acquires or is the assignee of a particular product or brand of alcoholic beverage from another manufacturer, the successor manufacturer, within ninety days of the date of the merger, acquisition, purchase, or assignment, may give written notice of termination, nonrenewal, or renewal of the franchise to a distributor of the acquired product or brand. If the successor manufacturer complies with the provisions of this division, just cause or consent of the distributor shall not be required for the termination or nonrenewal.* Upon termination or nonrenewal of a franchise pursuant to this division, the distributor shall sell and the successor manufacturer shall repurchase the distributor's inventory of the terminated or nonrenewed product or brand as set forth in division (C) of this section, and the successor manufacturer also shall compensate the distributor for the diminished value of the distributor's business that is directly related to the sale of the product or brand terminated or not renewed by the successor manufacturer. The value of the distributor's business that is directly related to the sale of the terminated or nonrenewed product or brand shall include, but shall not be limited to, the appraised market value of those assets of the distributor principally devoted to the sale of the terminated or nonrenewed product or brand and the goodwill associated with that product or brand." (Emphasis added.)

*Kennecorp Mtge. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.* (1993), 66 Ohio St.3d 173, 610 N.E.2d 987.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded for reinstatement of the trial court's judgment.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.